Good morning, Your Honors. May it please the Court. My name is Brad Banas. I represent the appellants in this case. In 2016, USCIS provided and published an authoritative interpretation of the regulation at issue today, and it answered the question we're asking this Court to decide. USCIS interpreted the very regulation, 8 CFR 214.14d2, to say, to allow for obligatory consideration of parole for principals and qualifying family members on the U Visa waiting list. It said it mandates obligatory consideration of those on the waiting list, including derivative family members. It recognized the significant public benefit as the importance of supporting family reunification and alleviating the suffering of the crime victim. That's what we ask this Court to do, is to adopt USCIS's own interpretation from 2016 that it has abandoned, not acknowledged, and kicked to the curb at the harm of my clients who have waited years in the United States without the ability to leave to attend funerals, births, see their family members. They are stranded in the United States despite being victims of crime, providing serious assistance to the law enforcement agencies, and being eligible for a U Visa. For that reason, this Court should reverse the lower court, because my clients have standing. They are entitled to a waiting list decision, and in that waiting list decision, they're entitled to consideration at a minimum for parole documents. Let's start with that last point. It seems to me your arguments related to parole decisions or parole relief hinges on the interpretation of this regulation 214.14d2. And the way I read that, just on its face, it seems like an or. It seems like you're going to get this, or you're going to get that, or maybe you could get both, but it's a choice. And you want us to read it as parole is a mandatory thing that has to be offered, and I'm not sure I understand how you get there with the language. Yes, Your Honor. I think that or is one part of that sentence, but to holistically read that sentence, it has to be read alongside the rest of that phrase, which is while. So USCIS will grant deferred action or parole to U1 petitioners and qualifying family members while the U1 petitioners are on the waiting list. That indicates an ongoing obligation. That's not when they are placed on the waiting list. It is for the full duration of the time on the waiting list. Currently, if you sign up for a U visa right now, the waiting list is approximately 23 years long. My clients are likely to wait another 8 to 10 years to be on the waiting list. And so USCIS chose to use the word while to provide these benefits for the duration of the time on that waiting list. Even if we agreed with that, and that's a logical argument to make, even if we agree that there is this ongoing obligation to do this, how do we get around the fact that the ongoing obligation could just be we're doing deferred action? Your Honor, I do think that even in the Supreme Court in 2024, in the Pulsifier decision, it identified the, quote, chameleon-like nature of the word or. And if we look at the next sentence, we go from just text to structure, Your Honor. The very next sentence in the very same regulation says USCIS in its discretion may authorize. USCIS knew how to use and make things discretionary. It used that exact terminology in the very next sentence. And so it did not use that terminology in the sentence above where we see this or, where at best it's ambiguous. And so I do think it's completely fair to interpret it in a chameleon-like way when we see it in the structure and the context that it would mean that USCIS can provide both. And I will note USCIS provides both deferred action and parole to members of the waiting list who acquire their waiting list placement when they're outside of the country. We provided this in our opening brief. If you receive a waiting list decision when you're outside of the country and you sue them, you have to sue them because they have no process for this, they will award conditional parole. When the person gets that parole travel document placed into their passport, they hop on a common carrier, they arrive at the United States border, Customs and Border Protection makes the decision to parole them into the United States, and then they are granted deferred action by United States Citizenship and Immigration Services. So USCIS interprets it to mean and in practice. But I understood the declaration from USCIS to explain that the reason that that happens is so that the folks who are outside of the country who are potentially eligible for a U visa will be treated equivalently to the people who are inside the country who are also eligible. Like we get them here so that they can be on equal footing as opposed to having those two groups on unequal footing. I would suggest by offering that to people outside of the country but not principal victims inside of the country, they are indeed exasperating disparate treatment, not ending it. And that's the issue here. My clients right now – But your argument is when they're here and they don't have parole, that means they can't come and go. That's correct, Your Honor. Well, that's going to be true for the folks who are somewhere else when this whole process starts. They get parole to get here, and then they're on the same footing. They don't have parole on an ongoing basis. They have deferred action just like everyone else. I would suggest that someone who's never been to the United States may qualify for a different type of visa to be able to travel to the United States. Most folks on U visas, including my plaintiffs here, because of the wait time to get a waiting list decision, they have accrued more than a year of unlawful presence regardless of having a bona fide determination. That means there's a 10-year bar. But you said that if you have only a bona fide determination that you're accruing unlawful presence. Point me to the point of law that says that because my understanding is different than that. There's no exception to the accrual of unlawful presence under the bona fide determination policy. And there's not— Can you point me to a regulation or some sort of policy that says that the agency, if somebody is on that BFD status, is getting accrual of unlawful presence? I think we would have to look for something that says it stops accrual of unlawful presence, not the other way around, Your Honor. That's how the regulations work here. Under 214.14d3, it indicates you're accruing unlawful presence unless or until you get the waiting list decision. The moment you get the waiting list decision, you no longer accrue unlawful presence. And that's one of our big arguments for standing, Your Honor, that BFD does not make that same exception. There is nothing in the policy, the memo, that says once you get the BFD, you're no longer accruing unlawful presence. It says it in the regulation for the waiting list decision. It doesn't say it for the BFD. And so that is a significant benefit for my clients because the accrual of unlawful presence can impact potential removal proceedings, potential inadmissibility grounds, all sorts of things, Your Honor. Let me just—I just want to make sure I understand everything you're saying. So if you're on the waiting list, okay, your argument is, and the way you read the reg is, that government must grant deferred action, the deferral part. And if the applicant wants travel out of the country, they must grant an advanced parole. Is that what you're saying? And they must grant the work documents. They have no discretion. No discretion whatsoever. Is that your argument? I think that for a domestic U visa applicant, the easiest answer is that for employment authorization, it is discretionary. The regulation makes that discretionary. That's not an issue here. I would suggest that it might be in their discretion, but they have to—they are required to provide at least an opportunity for domestic wait list holders to apply for parole under that regulation. That's what they said in 2016, that they have a mandatory obligation. To what? To consider? It mandates obligatory consideration of those on the waiting list for parole. So consideration. That's correct, Your Honor. Only. So they have discretion to deny it once they consider it. The very next sentence says, while mandating consideration, the language also strongly supports a grant of parole. I do think the language will grant will make it very difficult for denials. However, this is the problem with this case. The agency has done nothing since 2007 to do anything with this parole policy. And so we don't have anything other than this report I'm quoting, Your Honor, to know what the agency's actual interpretation is. Ms. O'Reilly's declarations in this case are very fulsome, but they are fact declarations. They are not authoritative interpretations of the agency of this regulation. Which is why, in my view, this whole case hinges on that interpretation of the regulation we started talking about. What does that mean in terms of the agency's obligation? Because it flows from there, right? I think so, Your Honor. If we disagree with your advanced interpretation, where does that leave your case? I do think there's two distinct issues here. One is whether members of the waiting list who are inside the United States are entitled to either parole or consideration of parole. And I think that would come down to interpreting the regulation, Your Honor. Then there's the second issue of whether my clients have standing and whether they're entitled to a decision under the wait list. We think that standing is very clear here. We think that the lower court simply adopted a factual conclusion to answer a legal question on the standing issue. And that the secondary question of that, of whether U.V.'s applicants are entitled to a wait list decision, is a very easy question. The Fourth Circuit and the Sixth Circuit have already said, yes, you are entitled to a wait list decision. The Sixth Circuit decision came out two weeks after the bona fide determination policy. They addressed it. The government tried to dismiss that case as moot two weeks before we had argument. And the Sixth Circuit kind of rejected that. And so I think if we have standing, this has to be at least remanded to order them to require or order the government to make waiting list decisions. And the standing question all boils down to this unlawful presence accrual? I don't think so, Your Honor. I think there are, you know, the standard for injury in fact is the right to be considered for a benefit. And I would suggest that they're being deprived of the right to be considered for a waiting list decision first. Well, except for, I mean, if it comes down to if you have a BFD determination or, yeah, a bona fide determination or if you have a wait list determination, either one of those gets you the same thing, then the lost opportunity argument doesn't make sense to me because it's like a lost opportunity to what? Your Honor, they don't provide the same thing. The first is — Then that boils down to the unlawful presence difference? No, Your Honor. That's one element. We think that there is no protection for BFD holders for accrual of unlawful presence. The second would be the actual wait list decision is different in kind, not just degree. It's an eligibility determination as well as a decision on any waiver application that's filed, a Form I-192. You are deemed both eligible and admissible. And when the agency finally gets to you 20 years from now, the only thing they're going to look at is whether you are continuing continuously eligible, meaning you don't have any criminal history. That's a significant thing because if you're not — if you have to go now prove — That sounds like procedural injuries. And we have case law that talks about purely procedural injuries that sort of in the real world aren't making much difference. We have to give pause about whether that's actually an injury for standing purposes. I would also note that there is some sort of consideration for parole if you're a member of the waiting list decision. As you've noted, Your Honor, and you're outside of the country, they don't have this argument. All of your clients are in the country. They are. If they get a waiting list decision — But they can't make — they can't advance this case based on what's going to happen to people who are not in the country. They are being deprived of the opportunity to get a wait list decision, leave the United States, get parole outside the United States, and return. I think that's only eligible for people inside the country. And then the last thing would be that this is a regulatory benefit. Over a pure policy memo, we've seen what happens in the Deferred Action for Childhood Arrivals context when a memo is providing these benefits versus a regulation. I would like to reserve the rest of my time, Your Honors. Thank you. Thank you. Good morning, Your Honors. And may it please the Court, Anissa Ahmed, on behalf of the federal government. Your Honors, despite the many ways that appellants frame and reframe their claims, what it all comes down to is whether or not they are entitled to anything more than they've already received, which is parole. Appellants who undoubtedly reside within the United States have received deferred action and employment authorization documents. They are not entitled to parole. The court can dismiss this appeal on the basis that review of parole-related decisions is precluded by 8 U.S.C. 1252 A2B2, or for the reasons that the district court dismissed the appeal. Before I get- Can you address the unlawful presence issue? Yes. And what is in the law that tells us that that's not going to happen for the people in bona fide status? Sure. So if a U visa applicant is granted deferred action, there is a policy memo that is dated May 6, 2009, that comprehensively discusses deferred action, and that once a U visa applicant or any applicant is granted deferred action, their unlawful presence accrual pauses. Now it doesn't address- Is that in the record? That is- I don't believe that that is in the record, but we can provide supplemental briefing on that matter if the court believes it's dispositive. And that policy memo is subject to change? Policy memos can be subject to change, but, again, any potential change is purely speculative and speculative- When did that policy go into effect? It went into effect May 6, 2009. And there haven't been changes since then? No, there's not. All right. Sure. I think what's important when discussing parole and whether or not U visa applicants that are domestic, that currently reside in the United States, which encompasses all appellants, are entitled to parole, I think it's important to discuss the purpose of the U visa program. And so, briefly, the U visa program was created to assist law enforcement officers and officials to investigate and prosecute the underlying crimes that U visa applicants were victims of, which makes them eligible for the U visa at all. And so the purpose of allowing people to be paroled into the United States who are abroad is to bring witnesses and those with information into the United States so that law enforcement officers can work with them to prosecute and investigate these crimes. So it would be anathema to the program itself to allow U visa applicants to come and go from, you know, within and without the United States as they would please because of this law enforcement interest. And I think that it's important to remember that, you know, when deciding whether or not parole is entitled. But, of course, it is not under the plain text of 8 CFR 214.14D2. Can I just ask a practical question? Sure. Why is it that we needed the BFD process or the bona fide process? Why can't we just get people wait list decisions? So Congress has capped the U visa, an annual, has created an annual cap of U visa issuances to 10,000 a year. The most recent data that I have is that there are currently over 400,000 applicants for both principal and derivatives pending for USCIS adjudication. And so the executive branch, USCIS in this case, understanding that there are real humanitarian concerns for what happens when individuals are waiting, you know, years and years, potentially decades for adjudication, they created the bona fide determination program. First they created the wait list program, but that itself was overwhelmed. And then they've created this bona fide determination program so that interim benefits can be awarded to persons who otherwise have, who have demonstrated that they at least have a bona fide application. What's the functional, like, resource difference for the government for making the wait list decision and the bona fide determination? So a wait list determination is a full adjudication, or I'm sorry, it would be a full adjudication if there were no statutory cap. But the bona fide determination analysis is not a superficial analysis. It still is an individualized case-by-case analysis. So under 8 CFR 214.14C2, there needs to be a law enforcement officer certification that lays out that the petitioner is actually a victim of a qualifying crime, that the law enforcement officer is investigating or prosecuting, and that plaintiff, or that the, excuse me, the applicant has relevant information and has been helpful for the investigation and prosecution. I'm not sure this is getting at the point I'm trying to get to. And the point I'm trying to get to may not matter to the analysis, but I'm just trying to figure out just functionally why the government thought it was necessary to have this more streamlined, like, why couldn't you just make the wait list determinations? I understand that only 10,000 people are going to get through a year. But is there a cap on how long the wait list can be? There is no cap on how long the wait list can be. Okay. So then why don't we just invest in this one process instead of having two? Because there is a difference in the analyses, and because a wait list determination can also include the issuance of a request for evidence, an RFE. So during the analysis, if an adjudicator finds that an application is lacking, you know, for whatever it is, they're missing signatures on pages, they're missing a biometrics, what have you, they will review the application and then they'll issue a request for evidence, an RFE, asking the applicant to cure whatever deficiencies exist in the application. And then the applicant, of course, has the opportunity to provide that information to cure their deficiencies. And then there's a more fulsome review of the statement from the applicant, from the law enforcement certification, the biometrics capture, the review of the inadmissibility waiver, if there is one, or whether in a determination about whether or not the applicant is admissible. So it is more fulsome, but that's all. So is the reason that we have the two processes just simply a matter of efficiency? That is correct. There's not some sort of reason why the government would want to make its more fulsome decision closer to time? There's not, because regardless of whether or not somebody has a waitlist determination, when a visa becomes available, they go through a full cap evaluation again to make sure that whether or not they're still, you know, admissible to the United States or they need a waiver, or to make sure that they're just still eligible. So there is still another review that occurs when a visa number becomes available for an applicant, regardless of whether or not they have a bona fide determination or a waitlist determination. I mean, it was the government's choice to make these two paths. And the government thinks there's a difference. So why shouldn't we conclude that there's a difference between these two things in terms of what people are getting for purposes of establishing standing? So for this case, which is what we have to, you know, the facts of the appellants of this case, there is no actual difference. So if you were in the United States and you receive a bona fide, well, you can only receive a bona fide determination if you're in the United States, because the benefits are deferred action and then the discretionary grant of employment authorization documents. And the same thing is for waitlist determinations, too, within the United States, going back again to the purpose of the program, which is to allow individuals who are assisting law enforcement agencies in the investigation and prosecution of crime to stay here. So they receive deferred action and then, of course, a discretionary grant of employment authorization documents. So these appellants are in no separate position from each other. There is no difference in the benefits that they have received. Well, your friend suggests that they are because one of them has an eligibility assessment and one of them doesn't. Why isn't that a difference? The eligibility, so there is no difference with respect to obtaining parole, which is what appellants are actually seeking. The difference, there is no leg up that a bona fide, or that a waitlist determinant has when it comes to asking for parole. Both, all appellants here, both the persons that have received bona fide determinations and waitlist determinations, can seek parole by way of a Form I-131 and ask for parole on humanitarian grounds. And that is, but that determination on parole, whether it's from USCIS issuing an advanced parole document, or Customs and Border Protection who grants parole, it's an independent assessment about whether or not somebody is eligible for parole. So the waitlist termination gives no leg up, and there is no substantive difference here. Just so I make sure I've got that point, that if you're on the waitlist and you get parole, for some reason or other, you're out of the country and you come in, you come in with a parole authorization, is that right? Customs can, at the border, could they reject that and say we're not going to let you in? They could reject that. So an advanced parole document is essentially like a parole preclearance that USCIS issues, saying that they essentially recommend this person to be paroled in. But any parole decision, any at all- Has to be made at the border. Has to be made by the border and is within Customs and Border Protection's discretion. So in that case, any parole that USCIS can offer is always conditional because the ultimate decision is up to CBP. Is there any data on how that- I'm not aware- If they, you know, the percent that Customs and Border Patrol rejects, you have an advanced authorization? I am not aware of any data. However, if the court finds it dispositive, the government will provide- It just seems like if there was a recommendation from, what is it, USCIS or whatever it is- I don't have that data. That Border Patrol, the Border Patrol would accept it. I don't have data about whether or not they would, but I do know that Customs and Border Protection does- Let me ask you one other question. What happens with this- How many people are on the wait list today? Most recent data I have, I believe, shows that it's 418,000 people. Yes, I'm sorry. Pending principles and derivative visas, it's 418,815. And how many people have bona fide determinations? Since 2021, USCIS has granted over 350,000 bona fide determinations, have conducted those determinations. Are any people being placed on the wait list today? There are people that are placed on the wait list. So the way that the process works is an applicant will submit their application process to- I'm sorry, their application package to USCIS. And USCIS will first, if the person- If the applicant is within the United States, will then first look to see if they qualify for a bona fide determination, because it is quicker to then confer these benefits onto these applicants. And if they find that they are missing any sort of documentation, for instance, if they're missing signature pages, if they're missing biometrics, then they will do a wait list determination. Additionally, if persons are abroad, they will do a wait list determination. And there are instances where if a person is in immigration proceedings, ICE may be able to- ICE can request a wait list determination from USCIS to facilitate the immigration proceedings. So there are people who are- So it sounds like if you're a little bit, how would we say, a little bit careless in your preparation of your application, you might end up on the wait list rather than be determined to have a bona fide application. Is that what you're saying? I wouldn't say careless, I'd just say if the application wasn't fully- But that's correct. But then they also then have the opportunity to cure those defects. So it's not just that you go into a wait list determination. Why don't they just put them back on as a bona fide applicant? Because the benefits are the same. So if someone goes through the wait list determination, then they just go through a more fulsome adjudication, but then the benefits, if they're within the United States, is still deferred action and the potential for- It's all very strange. Does somebody jump from being on the bona fide group to in queue for getting the visa? You have to go through the waiting list to get to the visa? You don't. They're separate paths. They are just in tandem, which is why the interim benefits are the same. We're providing the same benefits to people who are on the wait list. So all of the people on the wait list and all of the people in the bona fide pool are ranked based on the date that they submitted their application, just integrated based on date. Yes, that's correct. So when you said that there was- how many months did you say the wait list is now? I think the wait- For the visa, what year are they at now? That I'm not sure. I can provide that information in supplemental briefing if needed. I don't have the exact what year date that they are, that they're at right now. So if you're just- so if you're a recent bona fide- somebody who's been- an applicant who's been determined to have a bona fide application, I gather today you would be, like counsel said here, years out. For a full merits determination, that's correct, which is exactly why USCIS has created the bona fide determination process to provide these interim benefits so that people have, you know, lower prioritization. Deferred action. Deferred action and employment authorization. Employment authorization. Yes, which allows- If they ask for an advance parole determination, that would be no. That's not necessarily true. It just means you can- any applicant, any non-citizen can apply for advance parole. It's just that whether or not they receive it is based on whether or not there's an urgent humanitarian need. But that has nothing to do with whether or not they're on the wait list or whether or not they're on- they have a bona fide determination. That is an independent determination by USCIS and then by Customs and Border Protection. So again, there is no leg up that anybody receives if they're on- if they have a bona fide determination or they're on the wait list. It is a completely separate analysis. Let me ask, if somebody were to get an advance authorization to travel abroad, is it limited in time? Often I believe it's limited in time just for the- to satisfy the need of leaving. Like somebody wants to go to a memorial service or something. Yes, someone seeking- Ten days. Yes, somebody seeking medical treatment or going to end of life care for a loved one, it would be a cap. It's not like a passport, you know, which allows a non-citizen to enter and exit the country without any time bounds. Okay. We're running out of time. Yes, if I may briefly conclude. For the reasons discussed today and for the reasons discussed in the briefing, we ask that this court either find that the- that the district court lacked jurisdiction under 8 U.S.C. 1252 H.E.B. 2 or affirm the dismissal. Thank you. Thank you. Thank you, honors. I'm going to jump right in. I have a couple of technical questions and then I'll let you do it. So claim 3, have you dropped that one or is that still here? It's still here. Where in the briefing have you referenced- I don't see it anywhere, so it seems like it's been dropped. I would suggest that those are waitlist decision holders and they were deprived of consideration of any parole when they received the waitlist decision. And so our argument that members of the waitlist need to be- are required to be considered for parole argues for them too. Do you- can you point me to somewhere in the briefing where you argue claim 3? I can't, your honor. Okay. Claims 1 and 2, are those brought under 706-1? APA 706-1? Claim 1 is an unlawful withholding claim because the agency is refusing to issue waitlist decisions illegally in violation of their regulation. And claim 2 is that they will not receive parole decisions. So they're both unlawful withholding of decisions? That's correct, your honor. Two different decisions. So that's why I'm asking. Are they both brought under 706-1? Yes, your honor. Okay. Now you can do what you need to do. I would point to five cases. Bruno from Colorado, Arenales from Florida, Jesus from Vermont, Meir from Nebraska, Kotari from Chicago that all find plaintiffs identical to these have standing. The lower court's decision here is a vast outlier and those cases are continuing to go forward. Part of those cases that we've gotten a record now for the decision to refuse to do waitlist decisions. There's one policy memo and it's based on complete fabrications. They claim the only reason they've done the bona fide determination is they were losing lawsuits and it takes too long. And so they've replaced the waitlist decision with the bona fide process that, by the way, was put into Congress in 2008. Took them 15 years. That's the only reason, your honor. They don't address any other of these things we're talking about. But as a practical matter, it seems like people in the shoes of your clients would be happy that there's a bona fide process, right? Because they can get a decision about at least a preliminary eligibility decision earlier and therefore the work authorization and stuff can kick in quicker. Yes and no. It's not an eligibility determination. It is a completeness determination. Did they sign all the pieces of paper? But it comes with the ability to get some benefits that they were going to have to wait for until they got a waitlist determination, which was going to take longer. And one key benefit they don't get is the consideration for parole. When my colleague says a waitlist decision gives them no leg up on parole, that completely eviscerates and eliminates that part of the regulation that we went back to. It has to give them a leg up or it erases that provision from the regulation, which USCIS said in 2016 in an authoritative publication, mandates consideration. You notice we didn't hear anything about USCIS's prior position on this at all. They have changed 180 without any analysis whatsoever. And the result, the practical result, is my clients cannot see their parents who are dying. They cannot see their children. So you want to get rid of BFD, put all the BFD people on the waiting list? I don't, Your Honor. What I want is the elimination of the BFD as a substitution of the waitlist decision. That is, it should be a one, two, three-step process. A BFD within 60 days, which is what Congress said. A waitlist decision a year, 18 months after that. And then they can wait the 20-plus years to get their actual waitlist decision. And at the 20-plus years mark, they're not going to be asked, go back and find the officer who signed your supplement B because he signed it on the wrong line. That's impossible in 20 years. And that's the difference between an eligibility determination and a completeness determination. And I will just round it out with this, that my colleague brought the purpose of the U-Visa program. And what I would suggest is the purpose of the U-Visa program is give and take. It's carrot and stick. It benefits the police, but it also provides stability, family reunification, and benefits for the people on the waitlist because these folks are victims of crime. They've suffered trauma, and preventing them from going to see their parents for 25-plus years only increases that trauma, and that cannot be what Congress intended. Thank you, Honors. Thank you, Counsel. We appreciate the helpful arguments. The matter of U-Visa appellants versus the director of USCIS is submitted for decision. And we are adjourned for the week. All rise.
judges: PAEZ, BEA, FORREST